UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEAN JAMISON,

    Plaintiff,

v.                                                CASE NO. 8:13-cv-2424-T-23AEP

DEPUTY M. DeJESUS, *et al.*,

    Defendants.

                                             /

**O R D E R**

Jamison's complaint alleges (1) that defendant DeJesus violated Jamison's civil rights when Jamison was injured while DeJesus was transporting him in a police van from the county courthouse to the county jail and (2) that he was later denied adequate medical care. The named defendants are DeJesus (the driver of the van) and Dr. "Jane Doe" (the treating physician within the county jail). Only DeJesus was served with process.

The initial complaint was dismissed (Doc. 7) because negligence is not actionable under Section 1983. Jamison's amended complaint (Doc. 11) was served on DeJesus, who moves to dismiss under Rule 12, Federal Rules of Civil Procedure. (Doc. 22) Jamison opposes and moves both for an order to require physical therapy treatment by someone outside the prison system and for the appointment of counsel. (Docs. 26–28)

## MOTION TO APPOINT COUNSEL

Jamison moves (Doc. 28) for the appointment of counsel. Jamison has no right to the appointment of counsel. "The pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 25 (1981). A civil litigant has no absolute constitutional right to counsel because a Section 1983 action is civil in nature and the plaintiff's physical liberty is not jeopardized. *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993).

The fundamental fairness requirement of the due process clause of the Fourteenth Amendment to the United States Constitution mandates appointment of counsel only in "exceptional circumstances." *Lassiter*, 452 U.S. at 31. *See Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996). The existence of "exceptional circumstances" depends upon the type and complexity of the case and the ability of the *pro se* plaintiff. *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).[1] Jamison fails to meet his burden of proving "exceptional circumstances" requiring the appointment of counsel.

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

## MOTION TO DISMISS

On a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003), *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The allegations of fact and any reasonable inferences must combine to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), explains that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." As *Iqbal*, 556 U.S. at 678–79, explains, "plausibility" is greater than a mere "possibility" but less than a "probability."

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.
>
> [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "shown" — "that the pleader is entitled to relief."

## FACTS

On April 23, 2012, defendant "Ofc. DeJesus" transported Jamison and another inmate in a van from the county courthouse to the county jail. Jamison

alleges that both he and the other inmate were handcuffed and that the van lacked seat belts. Jamison alleges (1) that DeJesus drove "recklessly," (2) that after exiting the interstate DeJesus exceeded the speed limit by twenty miles per hour while also talking on a cellular telephone, and (3) that DeJesus "slammed onto the brake[s] and swerved in order to avoid another vehicle," which sudden movements of the van caused Jamison to "fly from the rear to the front of the van where his head collided with [a] partition, causing his neck to bend violently." Jamison alleges that he injured his neck, shoulder, and left arm.

According to the civil rights complaint (1) upon arriving at the county jail DeJesus placed Jamison and the other inmate in a holding cell despite the detainees' requests for medical treatment, (2) about an hour later DeJesus transferred the detainees to a medical holding cell, and (3) about a half-hour later another officer removed the detainee's restraints and medical care was provided, specifically over-the-counter pain pills and an X-ray of Jamison's back. Three weeks later Dr. "Jane Doe" told Jamison that she "saw nothing wrong" despite his complaining of "excruciating back pain and the lost range of motion and feeling in his right arm." Jamison alleges that he endured the pain for four months while confined in the Hillsborough County jail. After he was transferred to the Florida Department of Corrections ("DOC"), Jamison was allegedly diagnosed with "major nerve damage starting from the neck that runs down the outer portion of his right arm down through his fingers." Jamison seeks "one million dollars in punitive and

compensatory damages for my injuries and future medical expense and any other relief deemed appropriate."[2]

**Exhaustion of Administrative Remedies**:

DeJesus is correct that exhaustion of administrative remedies is required before a Jamison may file a Section 1983 action. "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Jamison must "properly exhaust" the administrative remedies. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). The failure to "properly exhaust" the administrative remedies will bar a prisoner from pursuing a claim in federal court. "[S]aying that a party may not sue in federal court *until* the party first *pursues* all available avenues of administrative review necessarily means that, if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court." *Ngo*, 548 U.S. at 100 (italics original). *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005) ("[W]e hold that the

---

[2] DeJesus argues that Section 768.28(9)(a), Florida Statutes (2012), precludes Jamison's recovering monetary damages absent proof that the defendant "acted in bad faith or malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." The statute is inapplicable because Jamison asserts no claim for relief under state law.

PLRA's exhaustion requirement does contain a procedural default component: Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim. Therefore, Johnson's grievance, which he filed out-of-time and without good cause, is not sufficient to exhaust his administrative remedies for purposes of the PLRA exhaustion requirement."), *cert. denied*, 548 U.S. 925 (2006). *Cf. Brown v. Sikes*, 212 F.3d 1205, 1210 (11th Cir. 2000) ("We hold that 42 U.S.C. § 1997e(a) requires a prisoner to provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved in the alleged deprivations, as the prisoner reasonably can provide.").

This mandatory exhaustion requirement applies even when administrative remedies do not allow the requested relief. *Ngo*, 548 U.S. 85 ("[A] prisoner must now exhaust administrative remedies even where the relief sought — monetary damages — cannot be granted by the administrative process."); *Booth v. Churner*, 532 U.S. 731, 736 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). *Accord. Leal v. Georgia Dep't of Corr.*, 254 F.2d 1276, 1279 (11th Cir. 2001) ("This means that 'until such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citation omitted).

In the motion to dismiss DeJesus argues that, even though Jamison filed both an informal and a formal grievance, Jamison failed to fully exhaust the available

administrative remedies before commencing this action because Jamison failed to appeal the denial of relief. Jamison argues that he appealed to the next level even though he never received a response to the formal grievance. DeJesus has the burden of proving that Jamison did not fully exhaust his administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that lack of exhaustion is an affirmative defense); *Dixon v. United States*, 548 U.S. 1, 8 (2006) (recognizing that the burdens of both production and persuasion are on the same party). DeJesus provides no evidence to prove that Jamison failed to exhaust his administrative remedies.

**Deliberate Indifference to Jamison's Safety**:

The amended complaint alleges that "Jamison's rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution were violated where Defendants acted with deliberate indifference to his rights to be free from gratuitous hazards . . . ." (Doc. 11 at 8) Although not explicitly stated, apparently Jamison was a pretrial detainee when the alleged incident occurred. A pretrial detainee enjoys the protection afforded by the Due Process Clause of the Fourteenth Amendment, which ensures that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV. *See Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979) (explaining that the Due Process Clause of the Fourteenth Amendment protects a detainee whereas the Eighth Amendment protects a prisoner). The two constitutional provisions offer the same protection. The Fourteenth Amendment provides a pretrial detainee no greater constitutional protection than the Eighth

Amendment provides a prisoner. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 328 (1986) ("[T]he Due Process Clause affords [plaintiff] no greater protection than does the Cruel and Unusual Punishment Clause."), and *Hasemeier v. Sheppard*, 252 Fed. App'x 282, 284 (11th Cir. 2007)[3] ("Because Hasemeier was a pretrial detainee, we analyze his claims of excessive force under the Fourteenth Amendment, using the same standards as used for Eighth Amendment claims.").

Jamison alleges that DeJesus's driving was proof of deliberate indifference to Jamison's safety. The crux of this claim is that, knowing that Jamison was wearing security restraints but not secured in the van by a seat belt, DeJesus's failure to drive more cautiously caused Jamison's injury. According to the amended complaint, although DeJesus was allegedly speeding and talking on a telephone while driving, Jamison was injured when DeJesus avoided a traffic accident. In his motion to dismiss DeJesus correctly cites many cases that hold that similar facts fail to prove deliberate indifference. For cases involving an injury, see *Smith v. Sec'y, Dep't of Corr.*, 252 Fed. App'x 301, 304 (11th Cir. 2007) ("[W]e cannot say that riding in a van equipped with the manufacturer's car seats, seat belts, and windows is a necessity, such that riding in a van without these characteristics is a deprivation of the minimal measure of life's necessities or is something that modern society would find intolerable."), *Jabbar v. Fischer*, 683 F.3d 54, 56, 58 (2nd Cir. 2012) (holding "that the

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

failure of prison officials to provide inmates with seatbelts does not, without more, violate the Eighth or Fourteenth Amendments," even though a shackled but un-restrained inmate "sustained injuries to his face, head, and back" when "he hit his head on another seat and was knocked unconscious" when the transport bus "made a forceful turn [and] Jabbar was thrown from his seat"), and *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 904 (8th Cir. 1999) (holding that use of a transport wagon without seat belts amounts to no deliberate indifference even though a shackled but un-restrained pre-trial detainee "was tossed around as [the driver] made turns, stops, and starts [and the detainee] was thrown forward into the bulkhead of the compartment causing severe injuries and rendering him a quadriplegic"), *cert. denied sub nom Spencer v. Board of Police Comm'rs of Kansas City, Mo, Police Dep't*, 528 U.S. 1157 (2000).  For cases without an injury, see *Quinlan v. Pers. Transp. Servs. Co., LLC*, 329 Fed. App'x 246 (11th Cir. 2009) (finding no constitutional violation when the inmate was shackled and transported without a seatbelt from Illinois county jail to Florida prison but who sustained no physical injury during the transport) and *Cooks v. Crain*, 327 Fed. App'x 493, 493 (5th Cir. 2009) (rejecting claim by an uninjured inmate "that being transported in vehicles that lacked seatbelts was so unsafe as to violate his constitutional rights").  The facts in the amended complaint fail to show that DeJesus was deliberately indifferent to Jamison's safety.

**Medical Care**:

The amended complaint alleges that "Jamison's rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution were violated where Defendants acted with deliberate indifference to his rights . . . to receive adequate medical care for his serious medical needs." (Doc. 11 at 8)  Jamison alleges (1) that he was confined for approximately two hours before he received medical attention, which consisted of over-the-counter pain pills and an X-ray and (2) that three weeks later when he was examined by Dr. "Jane Doe," further treatment was refused because the doctor "saw nothing wrong" with Jamison.

A state has the constitutional obligation to provide adequate medical care — not mistake-free medical care — to those in confinement. *Adams v. Poag*, 61 F.3d 1537 (11th Cir. 1995), *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989).  "Accidents, mistakes, negligence, and medical malpractice are not 'constitutional violations merely because the victim is a prisoner.'" *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994), *citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Instead an inmate is protected from deliberate indifference to a serious medical need.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  In analyzing a claim of deliberate indifference to a serious medical need, a court must focus on two components: "whether evidence of a serious medical need

exists; if so, whether the defendants' response to that need amounted to deliberate indifference." *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). These two components are explained further by *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (footnotes omitted), *cert. denied*, 531 U.S. 1077 (2001).

> To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need [ ]," *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291, one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994), and second, that the response made by public officials to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law, *Estelle*, 429 U.S. at 105–06, 97 S. Ct. at 290–92 (internal quotation marks omitted). Similarly, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and . . . draw[ing of] the inference," *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. Ultimately, there are thus four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts.

*See also Clas v. Torres*, 549 Fed. App'x 922 (11th Cir. 2013) ("For a prisoner to state an Eighth Amendment inadequate medical treatment claim under § 1983, the allegations must show (1) an objectively serious medical need; (2) deliberate indifference to that need by the defendant; and (3) causation between the indifference and the plaintiff's injury.").

Applying a generous interpretation to the amended complaint, Jamison might allege a claim against DeJesus for delaying medical care and against Dr. "Jane Doe" for denying medical care.

DeJesus:

Depending on the circumstances, including the length of the delay, delayed treatment can constitute deliberate indifference. *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994). Therefore, Jamison must allege sufficient facts to establish that DeJesus knew of a serious medical condition from which Jamison was suffering and, intentionally or with reckless disregard, delayed treatment. *See generally, Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the eighth amendment."). The delay between the accident and the initial medical examination was approximately two hours. Medical personnel determined that the appropriate medical care was a couple of pain pills and an X-ray. Under *Iqbal*, 556 U.S. at 679, these facts fail to "show" — as compared to allege — that DeJesus knew that Jamison had sustained a "serious medical need" necessitating medical treatment in less than two hours.

Dr. "Jane Doe":

The amended complaint alleges that three weeks after the accident he was examined by Dr. "Jane Doe," who stated that "nothing was wrong with" Jamison. Although not explicitly stated, undoubtedly Dr. "Jane Doe" had the results of the X-rays

taken after Jamison's arrival at the county jail. After examining Jamison Dr. "Jane Doe" was of the opinion that Jamison required no more medical care. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Although later proven incorrect, a difference of opinion over matters of medical judgment, in either diagnosis or treatment, supports no constitutional claim. "A medical decision not to order an X-ray or like measures does not represent cruel and unusual punishment. At most it is medical malpractice." *Estelle v. Gamble*, 429 U.S. at 107. *See Fischer v. Federal Bureau of Prisons*, 349 Fed. App'x 372, 374 (11th Cir. 2009); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981). *See also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.").

**MOTION FOR PHYSICAL THERAPY**

Jamison moves (Doc. 27) to compel the Everglades Correctional Institution to provide him with physical therapy by a medical provider outside of the prison system. This civil rights action involves only employees of Hillsborough County and not the DOC. As a consequence, the district court lacks the authority to order the DOC to provide the requested relief.

Accordingly, the defendant's motion to dismiss (Doc. 22) is **GRANTED**. Jamison's motions (Docs. 27 and 28) are **DENIED**. The clerk must enter a judgment for the defendant and close this case.

ORDERED in Tampa, Florida, on March 31, 2015.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE